EZRA F. LAMBERT and Another v. SCANDINAVIAN-AMERICAN BANK OF ST. PAUL and Others.[1]

November 9, 1896.

Nos. 10,098—(29).

Insolvency—Discharge of Debtor—Laws 1895, c. 67—Prior Debt—Appearance—Waiver.

> Laws 1895, c. 67, providing for the absolute discharge of insolvent debtors from their debts, construed, and *held*, that a creditor, who appeared in this case in obedience to the citation, issued and served as provided in such act, and answered, first, that his debt was contracted before the passage of the law, and, second, that the insolvents had within six years next prior to their assignment disposed of their property to defraud their creditors, did not thereby waive his right to insist on his first defense, that his debt was excluded by the constitution from the effect of the law.

Same—Promissory Note—Extension.

> *Held*, further, that where a promissory note was given before the passage of the act, but the time of payment was extended after it took effect, the original contract to pay the debt, represented by the note, was not superseded by the contract of extension, and that the act is not operative as to such debt.

Notice of Appeal—Service—Party not Appearing.

> Notice of appeal must be served on each adverse party as to whom it is sought to review in this court any order or judgment, although he did not appear in the action or proceeding in the district court.

[1] Reported in 68 N. W. 834.

In the matter of the assignment of Ezra F. Lambert and Alfred H. Lambert, copartners as Lambert Brothers, insolvents, pending in the district court for Ramsey county, the insolvents made application for an absolute discharge from all their debts and indebtedness. From an order, Otis, J., denying their application in part, the insolvents appealed. Affirmed.

*William G. White*, for appellants.

*Munn, Boyesen & Thygeson*, for respondent Scandinavian-American Bank of St. Paul.

*John B. & E. P. Sanborn*, for respondents John P. Knowles and National German-American Bank of St. Paul.

*Stringer & Seymour*, for respondent First National Bank of Hastings.

*W. C. Goforth*, for respondent Second National Bank of St. Paul.

START, C. J. The appellants herein made an assignment for the benefit of their creditors under the provisions of the insolvent law (Laws 1881, c. 148), and acts amendatory thereof.[2] Afterwards they made application in such insolvency proceedings to the district court for an absolute discharge from their debts, pursuant to the provisions of Laws 1895, c. 67, approved April 24, 1895. Thereupon the court made its order directing that the order to show cause and citation to creditors be issued as provided by the law, which was done, and they were duly served. The respondents herein severally appeared in response to the citation, and opposed such discharge as to their respective debts. No other creditors appeared.

The answer of the respondent the National German-American Bank was to the effect that its debts against the insolvents were contracted, and the contract to pay them was made, prior to the enactment of the law of 1895, and made no other answer. The respondents the First National Bank of Hastings, the Second National Bank of St. Paul, and the Scandinavian-American Bank severally made substantially the same answer as did the National German-American Bank; but each further answered to the effect that the insolvents did, within six years next prior to the making of their assignment for the benefit of their creditors, fraudulently dispose of portions of their property for the purpose of defrauding their creditors. The appellants.

2 G. S. 1894, §§ 4240–4254.

by their several replies admitted that the several debts of the respondent banks were contracted prior to the act of 1895, and denied the other allegations of the answers.

The respondent Knowles answered to the effect that on April 13, 1894, he loaned to one of the appellants $1,400, and took his promissory note therefor due in one year, and that when it matured the time of payment of the debt was extended for three months, and again for one year more; and, further, that on June 23, 1894, he loaned such appellant the sum of $1,000, taking his promissory note therefor due in one year, and that at and after its maturity the time of payment of the debt was twice extended, the entire extension being for one year from June 23, 1895. The reply to Knowles' answer admitted the facts therein alleged.

Upon the hearing the court made its order denying the appellants' application as to each of the respondents, as to all creditors residing without the state who had not appeared in the insolvency proceedings, and as to all creditors residing within the state whose debts were contracted prior to April 24, 1895, and who had not appeared in the insolvency proceedings, and granting it as to all other creditors. This appeal is taken from so much of the order as denied the appellants an absolute discharge.

1. It was conceded on the argument that, as to the National German-American Bank, the order appealed from must be affirmed. As to the debts of the respondent Knowles, the appellants claim that the existing contracts to pay his debts were made since the bankrupt law of 1895 was enacted, and that hence, it does not impair the obligations of the contracts, for the reason that the contracts, entered into after the passage of the law, extending the time of the payment of the debts, superseded the contracts to pay them made when the debts were incurred. Whether such would have been the case if new notes had been taken in absolute payment of those given when the debts were contracted, we need not consider, for such is not this case. There is nothing in the record to suggest that new notes were taken for any purpose when the time for the payment of the debts was extended. The new contracts, simply extending the time of the payment of the debts, did not create the obligation to pay them, for that was done by the original contracts, and the contracts extending the time of payment merely postponed the time for

discharging the obligations of the contracts made when the debts were incurred. The time agreed on by the parties, as to when payment of the debts should be made, was only an incident to the contract to pay them, and might be enlarged without extinguishing the primary contract obligation to pay them. The original contracts to pay the debts, after a change had been made in the time for the performance of the contracts, remained in all other respects unchanged. This contract obligation to so pay could not be impaired by the subsequent passage of the bankrupt law in question. The case of the respondent Knowles stands, then, on the same basis as that of the National German-American Bank, and the order must also be affirmed as to him.

2. The facts are substantially the same in the cases of the remaining respondents. Their respective cases differ from that of the National German-American Bank only in the fact that, in their answers to the citation, they alleged two objections or defenses why the application should not be granted as to them, viz. that their debts were contracted before the bankrupt law was passed, and, further, a fraudulent disposition of their property by the appellants. The trial court held the first defense, the facts being admitted, a conclusive reason for denying the application as to each of these respondents. But the appellants claimed that, by pleading the second defense, the respondents waived the first one, and that the court erred in not so ruling, and in not granting their request to set the cases for trial on the issue made by the second defense and reply thereto. The only question for our consideration on this branch of this case is whether the respondents waived their first defense by pleading a second but not inconsistent one.

The validity and scope of state bankrupt laws were discussed and determined in the case of Wendell v. Lebon, 30 Minn. 234, 15 N. W. 109, and the here material conclusion reached was as follows: A state has power to pass such laws, subject to the authority of congress to adopt a uniform system of bankruptcy, provided they do not impair the obligations of contracts. Such a law is invalid as to creditors whose contracts were made before its passage, and also inoperative as against creditors who are citizens of a state other than the one enacting the law. But, if any creditor belonging to the excepted class voluntarily makes himself a party to the proceedings

under the law, as by proving his claim and accepting the benefits of the law, he cannot afterwards be heard to object that he comes within the excepted class. The provisions of Laws 1895, c. 67, by virtue of which it is claimed that these respondents waived their right to oppose the discharge of the appellants, as to them, on the ground that their debts were contracted prior to the passage of the law, must be construed in harmony with this conclusion.

The act in question is in form an amendment to the general insolvency law of the state, and provides that, upon the filing by the insolvent of his application for a discharge from his debts, a citation shall be issued by the court directing all creditors to show cause why such discharge should not be granted, and, further, that any creditor desiring to oppose the discharge may file his duly-verified answer setting forth the grounds of his objection to such discharge. Section 22 of the act declares, among other matters, that the filing of an affidavit, or the making proof of a claim, or the receiving of a dividend, or the participation in the insolvency proceedings, or the service within the state of the order and citation to show cause, shall be an appearance in the matter of such assignment and application for discharge, and confer jurisdiction upon the court to make such order and determination.

It is clear, from a reading of this statute, that the proceedings on the application for the insolvent's discharge from his debts are special and incidental to his assignment of his property for the benefit of his creditors, and in their nature distinct from the general insolvency proceedings proper, wherein his creditors and the amount of their claims are ascertained, and his assets marshaled and distributed to such creditors. It is in these general insolvency proceedings only that the voluntary filing of an affidavit, or the making of proof of claim, or the receiving of a dividend, or a participation in the proceedings, is a waiver of the creditor's constitutional guaranty against the impairment of his contract by the subsequent passage of a state bankrupt law. Any other construction of the law would make it simply a trap for such creditor, cunningly devised to deprive him of his constitutional rights.

It is entirely true, as claimed by counsel for the appellants, that the court acquired, by the personal service of the citation on the respondents within the state, complete jurisdiction to hear and de-

termine the application for the discharge, and that any order made thereon would bind the respondents unless reversed on appeal; also, that the respondents, by answering in the special proceeding, appeared therein, and that the court had jurisdiction of their persons. But this is a radically different matter from voluntarily appearing and participating in the general insolvency proceedings and accepting a benefit thereunder. The question is not one of jurisdiction, but of a waiver of constitutional rights. By answering the citation and stating all of their objections or defenses, as required by the statute, the respondents did not waive such rights. They neither asked nor received any benefit under the insolvency proceedings.

Counsel for appellants suggests that the position of the respondents, after they answered, was the same as that of a party who unites in his answer a plea of abatement to the effect that the court has no jurisdiction over his person, because the process of the court was never served on him, with a defense on the merits. There is no analogy between such a case and the one at bar; for, in the former case, the party, by pleading to the merits, waives the objection that he is not in court, but in the case at bar the court had jurisdiction over the subject-matter of the application, and had acquired jurisdiction of the persons of the respondents by the personal service upon them within the state of its process.

It is further claimed that the respondents made proof of their claims in the insolvency proceedings, within the meaning of the statute, by setting out in their answers the amount of their debts against the insolvents, and when contracted. It was necessary for the respondents to show by their answers that they were creditors of the insolvents, else they would have no right to object to their discharge, and to allege when and under what circumstances their debts were contracted, in order to show that the statute was not operative as to their claims. It is perfectly obvious from the answers that the allegations therein as to the debts of the respondents were not intended as proofs of their claims in order to obtain dividends thereon.

We therefore hold that none of the respondents waived by their answers the right to object that its debt was excluded by the constitution from the operation of Laws 1895, c. 67.

3. The appellants seek to review here so much of the order of the district court as denied their application as to resident creditors

whose debts were contracted before the law was enacted, but upon whom the citation was personally served within this state, and who failed to appear in the court below. No notice of appeal was served on any of such creditors, and therefore there was no appeal from the order as to them. The mode of taking an appeal prescribed by statute is mandatory, and must be strictly complied with, and notice served as the statute requires, or no appeal is perfected. The statute (G. S. 1894, § 6134) expressly requires that the notice must be served on the adverse party. The fact that such creditors did not appear in the district court does not constitute an exception to the mandate of the statute as to the service of the notice of appeal.

It is true that G. S. 1894, § 5212, provides that, when a defendant has not appeared, service of notices or papers in the ordinary proceedings in an action need not be made on him. But the removal of the action by appeal to this court is not an ordinary proceeding in the action. While an appeal is the continuation of the original action in another jurisdiction, yet it is analogous in many respects to a writ of error, which is regarded as the beginning of a new action, and in each case the service of notice of the proceeding on the adverse party is necessary unless the statute dispenses with it. Where there are several parties to an action or proceeding, some of whom have not been served with the notice of appeal, this court will consider only the questions between the appellant and the parties upon whom the notice of appeal has been served. Frost v. St. Paul B. & Inv. Co., 57 Minn. 325, 59 N. W. 308; Oswald v. St. Paul Globe Pub. Co., 60 Minn. 82, 61 N. W. 902.

Order affirmed.