JOSEPH M. DAVIS and Others v. SWEDISH–AMERICAN NATIONAL
BANK and Others.

Nos. 11,918—(211).

## On Motion to Dismiss Appeals.

November 28, 1899.

### Notice of Appeal—Parties to Appeal.

An assignee in insolvency filed his final account, and applied, on proper
notice, to have the same allowed. There were 41 creditors who had filed
claims, but only 3 of these appeared on the hearing. These 3 opposed
the claim for compensation for the assignee and his attorneys, the claim
was disallowed, and the assignee appealed, and served the notice of ap-
peal on said 3 creditors only. On motion to dismiss the appeal for failure
to serve on the other creditors, *held*, the service is sufficient, and the
motion is denied.

### Attorney—Right of Appeal.

The attorneys appealed, also. *Held*, they were not parties to the pro-
ceeding in the court below, have no independent right of appeal, and their
appeal is dismissed.

## On Appeal.

December 19, 1899.

### Account of Assignee.

This is an appeal from certain orders of the district court settling the
account of the appellant as assignee in insolvency, in which it is *held*:

### Fraud—Finding.

The finding of the trial court to the effect that the assignee and his
attorneys in the management of the trust estate were guilty of actual
fraud, gross misconduct, and bad faith is sustained by the evidence.

### Compensation of Assignee.

If a trustee has been guilty of fraud, wilful default, or gross negli-
gence in the management of the trust estate, compensation for his ser-
vices will be denied to him. This rule is not abrogated by Laws 1895, c.
66, § 6, relating to fees of assignees and their attorneys in insolvency
proceedings.

### Compensation of Attorney.

If an attorney is guilty of fraud or bad faith as to his client in the matter of his employment, he is not entitled to any pay for his services.

### Use of Trust Fund—Finding Sustained by Evidence.

The finding of the trial court that the assignee used the trust fund in his own business is sustained by the evidence. The general rule is that if a trustee mingles the trust fund with his own money, or uses it in his own business, he will be charged with simple interest on the fund at the legal rate, but if he receives or makes more than that he must account for it; following St. Paul Trust Co. v. Kittson, 62 Minn. 408, and distinguishing and limiting In re Shotwell, 49 Minn. 170.

### Costs and Disbursements—Lien of Attorney.

A judgment for costs and disbursements is the property of the party recovering it, and not of his attorney,—subject, however, to the lien of the latter for his services.

### Interest.

The trial court did not err in disallowing the claim of the assignee for fees for himself and his attorneys, nor in charging him with interest on the trust fund and the amount of a judgment collected by his attorneys.

In the matter of the assignment of Jacob Skoll, insolvent, pending in the district court for Hennepin county, Joseph M. Davis, the assignee, made application for allowance of his final account and to have the compensation of himself and of his attorney fixed. The Swedish-American National Bank interposed objections. The court, Elliott, Simpson, Johnson, McGee, Lancaster, and Harrison, JJ., made an order disallowing the claim for compensation and charging the assignee with certain items. Thereafter the court, Simpson, McGee, Harrison, and Elliott, JJ., made an order denying the application of the assignee to have the previous order modified, except as to one item of the account (Elliott, J., dissenting in so far only as the order adjudged the assignee guilty of actual fraud). From both orders, the assignee and Ambrose N. Merrick and others, his attorneys, appealed. Affirmed as to the assignee.

In the supreme court a motion was made to dismiss the appeals. Denied as to appeal of the assignee. Granted as to the appeal of Merrick and others.

*Simon Meyers* and *Wm. H. Donahue*, for appellant Davis.

*M. H. Boutelle*, for appellants Merrick and others.

*A. Ueland*, for respondents.

Upon the motion to dismiss the appeals, the following opinion was filed November 28, 1899:

CANTY, J.

1. Skoll made an assignment for the benefit of his creditors under the insolvency law of 1881. The appellant Davis is the assignee. He filed his final account, and on the hearing of the same the court refused to allow him compensation for his services, or for the services of his attorneys, and he appeals from the order disallowing all of the same.

Three of the creditors of Skoll appeared at said hearing, objected to the allowance of any such compensation, and opposed such allowance. The notice of appeal was served on those three creditors, but not on any of the other creditors. There were in all 41 creditors who had filed claims, but none of them, except said three, appeared at said hearing or opposed such allowance. Said three creditors now move this court to dismiss the appeal because the notice of appeal was not served on the other creditors, of whom sixteen are not residents of this state; but the claims of five of these have been assigned to a resident of this state, and the claims of six of the others were filed through attorneys residing in this state.

In our opinion, every one of the creditors who did not appear at the hearing has a direct interest in having the order of the court below sustained; and we cannot hold that, as appellant contends, those other creditors are not adversary parties. But it does not follow from this that all of the creditors who filed claims must be served with notice of the appeal.

As a general rule, the great majority of the creditors who file claims in such a proceeding do not desire to be put to the trouble, annoyance, and expense of taking part in the various contests which may arise in the course of the administration of the insolvent estate, or to be mulcted with the costs which might be taxed against them on account of the unsuccessful efforts of the other creditors in such

contests, and for these reasons remain passive, allowing their claims so filed to abide the event of the contests which the other creditors conduct on behalf of all of the creditors. Of course, if the creditors who so conduct the contest are successful, they are, as a general rule, entitled to be reimbursed for their reasonable expenses out of the common fund so saved or recovered. But, if the creditors who would thus remain passive must be served with notice of appeal, they are liable for the costs of the appeal if unsuccessful, and, when served, cannot safely permit their rights on the appeal to go by default, but must employ counsel, prepare and print briefs, and take part in the argument.

The creditors who file claims in such a proceeding are generally quite numerous, and it is often impracticable to serve notice of appeal on all of them who have filed their claims, and have thereby become parties to the proceeding. These claims are usually filed in the most informal manner, and without notice to any one interested, except the assignee. A large portion of them are, as a general rule, sent in by mail by nonresident creditors or attorneys; and there is no one in the state, representing such creditors, on whom notice of appeal could be served. Usually the claims are being filed from day to day during the whole, or nearly the whole, of the time during which the estate is being administered. When the court by its order limits the time within which to file releases, and that time has expired, it is usually the case that a number of the creditors who filed claims fail to file releases, and are barred from participating in the estate. Again, it often happens that some of these creditors are afterwards permitted to file releases and participate. Under these circumstances, it would often be difficult to determine on whom to serve the notice of appeal. If the appellant failed to serve on all, he would fail in his appeal; and, if he served on some on whom he should not serve, he would be liable to pay them the costs of the dismissal of the appeal as to them. Then, it is often difficult, and even impracticable, to determine on whom notice of appeal should be served, if it must be served on all of the creditors who have filed claims, and who may be entitled to participate in the distribution of the assets. The proceeding is not one which is conducted either according to the common law or equity practice.

There are no regular pleadings, and the names of the parties are not formally stated in the title, or in any other part of the record.

We are of the opinion that, under all of these circumstances, it is a case for the application of the doctrine that where the persons or parties are numerous, have a common interest, and it is difficult to ascertain them definitely, the action or proceeding may be brought by a few on behalf of all, or against a few so situated that they may represent all. Story, in discussing the exceptions to the rule that all the parties in interest should be made parties to a bill in equity, says: .

"The most usual cases arranging themselves under this head of exceptions are, (1) where the question is one of a common or general interest, and one or more sue, or defend for the benefit of the whole; * * * (3) where the parties are very numerous, and although they have, or may have, separate, distinct interests; yet it is impracticable to bring them all before the court." Story, Eq. Pl. § 97. See also sections 96, 98, 99, 103, 104, 116, 120.

We must presume that all of the 41 creditors who filed their claims had notice of the hearing in the court below. Only three of these creditors appeared and opposed the application of the assignee, and it must be held that by failing to appear the other creditors impliedly consented that those who did appear and oppose the application might do so on behalf of all. Under these circumstances, it was sufficient to serve the notice of appeal on those who did so appear and oppose the application.

The result arrived at is not in conflict with Lambert v. Scandinavian-American Bank, 66 Minn. 185, 68 N. W. 834. In that case the insolvents made an application to the court, under Laws 1895, c. 67, for a discharge from the debts of their various creditors who had filed claims in the assignment proceeding. There were a number of these creditors who resided in the state, and on whom the notice of hearing was served, but they failed to appear at the hearing. The court denied the application as to them also, and the insolvents appealed, but failed to serve the notice of appeal on these creditors. This court rightfully held that, as to them, the order appealed from could not be reviewed. Their interests were wholly separate and distinct from those of the other creditors on whom the

notice of appeal was served, and the latter creditors did not represent the former.   In that case the creditors were not so exceedingly numerous, and the difficulties of serving the notice of appeal on them so very great, that the third rule quoted above from Story should be applied.

The motion to dismiss the appeal is denied.

2. The attorneys for the assignee also appeal from that part of the order denying their claim for compensation.   Said three creditors move to dismiss this appeal on the ground that the attorneys were not parties to the proceeding in the district court, and are not entitled to prosecute such an appeal.   In our opinion, the point is well taken.   The attorneys were merely the servants of the assignee, not parties to the assignment proceeding, and whatever compensation is awarded for them should be allowed to the assignee for them.   Stuart v. Boulware, 133 U. S. 78, 10 Sup. 242; Appeal of Pereyra, 126 Pa. St. 220, 17 Atl. 602.   Of course, if the client is insolvent, or acts fraudulently or in bad faith, or, without sufficient reason, refuses to apply for compensation for his attorney, the latter may apply to the court to be allowed to proceed in his own right and in his own name, or the name of his client, for compensation out of the fund in court.   And in that case the attorney may appeal, if unsuccessful.   But this is not such a case.

It is ordered that the appeal of Merrick & Merrick be dismissed.

The appeal of the assignee having been argued and submitted, the following opinion was filed December 19, 1899:

START, C. J.

On December 12, 1894, Jacob Skoll made an assignment for the benefit of his creditors, pursuant to the insolvency laws of this state, to Joseph M. Davis.   He accepted the trust, and on June 24, 1898, he presented to the district court of the county of Hennepin his final account as such assignee, showing receipts, $7,217.28, disbursements, $1,732.37, and asked its allowance; also, an allowance of $750 for his services as assignee.   Attached to the account was a bill of his attorneys for $1,810 fees and $197.75 disbursements, which was also presented for allowance.   Testimony was taken August 2, 1898, and the court thereafter, and on November

29, 1898, filed its order disallowing both assignee's and attorney's fees; charging the assignee with an item of $58.58, costs paid to and collected by his attorneys on an appeal to this court; also, charging him with interest on the funds in his hands from April 12, 1895, until distribution is made.

On December 19, 1898, he filed a petition for a rehearing, and for a modification of this order. The court thereupon made its order for a hearing on the petition on January 7, 1899, and staying proceedings on the first order until such hearing, and a decision thereon. Attached to the petition for a hearing was an account for money claimed to have been actually paid, prior to the making of the first petition, to his attorneys, for fees and disbursements, amounting in the aggregate to $733.40. Such proceedings were had upon the last petition that on September 23, 1899, the court made its order denying the petition, except that the assignee was allowed a credit for $67.50 omitted from his original account. He appealed from both orders.

It is proper here to state that the attorneys representing the assignee on this appeal were not his attorneys at any time prior to the filing of the petition for a rehearing. If we understand the claim of appellants' counsel as to these two orders, it is, in effect, that the second order takes the place of the first one, and that the findings of fact in the former, and the evidence offered on the petition for a rehearing, are alone to be considered on the appeal. Such is not the case, for both orders must be considered as practically one order. The second is in fact just what it purports to be on its face, namely, a modification of the original order as to the item of $67.50. All of the findings of fact in the original order, and the legal conclusions or directions based thereon, remain, except as modified by the second order. The question, then, for our decision, is whether such findings of fact are supported by the evidence; and, if so, are such conclusions correct? This involves a consideration of all of the evidence received on both hearings, and a history of the trust estate, as disclosed by the evidence.

1. The trial court found as a fact that the assignee and his attorneys in the management of the trust estate were guilty of gross misconduct, bad faith, and actual fraud. This finding was not

modified by the second order, and we are to inquire whether it is supported by the evidence. So far as the finding relates to the assignee, it is earnestly contended that the evidence does not sustain the finding. We have examined the record with the care befitting the gravity of the charge, and have reached the conclusion that the evidence sustains the finding. It is neither practicable nor desirable here to state and analyze in detail the evidence, which is voluminous. We deem it sufficient to refer only to the evidence as to the conduct of the assignee and his attorneys in relation to the claim of Joseph Robitshek against the trust estate. The evidence tends to show these facts:

The First National Bank of Minneapolis had a claim against the insolvent, Skoll, amounting to $17,000, which was secured by a second mortgage on his homestead. The claim was presented to the assignee for allowance, who disallowed it, and the bank appealed to the district court. While the appeal was pending the bank commenced an action to foreclose its mortgage, a decree of foreclosure was had and the mortgaged premises were sold to the bank for $1,000. Before the sale was confirmed, the claim of the bank was sold to Robitshek for $1,800, and the claim was then again presented to the assignee, who allowed it at $17,000. The foreclosure action was dismissed, the mortgage released, and the appeal of the bank from the disallowance of its claim was also dismissed. The negotiations leading to these results were conducted by the insolvent, Skoll, and the attorneys of the assignee. After the allowance of this claim of $17,000 by the assignee, the Swedish-American Bank appealed, as a creditor, therefrom. In the district court, Robitshek appeared by an independent attorney, and filed his complaint, asking the court to allow the claim of $17,000 in his favor, and to adjudge it to be a legal claim against the trust estate. The assignee appeared and answered, by his attorneys, admitting all of the allegations in the complaint, and demanding judgment that his action in allowing the claim be affirmed. The appealing creditor answered, and successfully defended against the allowance of the claim; the trial court finding as a fact that the money paid to the bank for its claim was not the money of Robitshek, but that it was paid and on behalf of the insolvent, Skoll, to enable him to

secure a release of his homestead from the mortgage, and to participate in the distribution of the trust estate. Thereupon the assignee united with Robitshek in a motion to set aside the finding of the court and for a new trial. The motion was denied, and the assignee appealed from the order to this court. The order was affirmed. See Robitshek v. Swedish-American Nat. Bank, 68 Minn. 206, 71 N. W. 7.

After the order of the district court disallowing the claim was affirmed in this court, and judgment entered accordingly, Robitshek procured from one of the judges of the district court an order permitting him to present his claim to the assignee, who was directed to act upon it by allowing or disallowing it. A copy of this order, with the claim, was presented to the assignee by one of his attorneys, and he again promptly allowed it. This order and allowance were afterwards set aside by the district court in proceedings taken by creditors. Further attempts were made to secure the allowance of this $17,000 claim against the trust estate, but they were defeated by the vigilance of creditors. An allowance of $350 was made by the order of the district court to such creditors out of the trust estate for the fees of their attorney in . successfully opposing the allowance of the Robitshek claim; also, for $69.39 for disbursements incurred in proceedings to obtain the right of creditors to share in the trust estate without releasing their claims. The assignee appealed to this court, and the decision of the district court was affirmed, except as to the $69.39. See Swedish-American Nat. Bank v. Davis, 71 Minn. 508, 74 N. W. 286.

There was other evidence on the trial tending to show other acts of misconduct and bad faith on the part of the assignee and his attorneys in the management of the trust estate. As to the attorneys of the assignee, the evidence, taken as a whole, unquestionably supports the finding in question of the trial court. In considering the evidence as to the assignee, the fact that he was wrongly advised and directed by his attorney must not be lost sight of; but, making due allowance for this fact, and assuming, as we must, that he is a man of ordinary sense, we are of the opinion that the finding is also sustained by the evidence as to him.

2. It is further claimed by counsel for the assignee that the con-

clusion of the trial court that he was not entitled to any compensation for his services is not justified by its finding of fact as to his conduct and that of his attorneys, for the reason that his right to such compensation is not a matter of judicial discretion, but a vested right, secured by statute (Laws 1895, c. 66, § 6), which provides that the court shall determine specifically and allow the reasonable value of the services performed by the assignee or receiver and his attorney.

The statute aside, the law as to compensation to trustees for their services is well settled. In England the rule is that no compensation will be allowed to trustees for their services in the management of the trust estate, but it is now the general equity rule in the United States that trustees are entitled to reasonable and just compensation for their services. The rule is just and politic, for the best way to secure honest services is to give honest pay. It is equally well settled that if a trustee has been guilty of fraud, wilful default, or gross negligence in the management of the trust estate, compensation for his services, to which he would otherwise be entitled, will, as a general rule, be denied to him. Notes to Gibson's Case, 17 Am. Dec. 266–274; 1 Bland's Ch. 138; 2 Perry, Trusts, § 919; 27 Am. & Eng. Enc. 187. See St. Paul Trust Co. v. Kittson, 62 Minn. 408, 65 N. W. 74. This last rule is also wise and wholesome,—especially so when applied to officers of the court, such as assignees and receivers; for its just enforcement has a tendency to secure an honest and faithful discharge of official trusts, and to curb the temptation to abuse them for selfish purposes.

The statute relied on by the assignee in this case must be construed with reference to the equity rule. Now, whether the right of a trustee to compensation rests upon the equity rule, or upon the express provision of the statute, the reason for the rule that an unfaithful trustee will be dismissed empty handed is the same, and the statute will not be construed as abrogating the rule unless an intention to do so is clearly manifest upon its face. Some courts have held that, where a statute specifically fixes the compensation which an assignee or executor or administrator shall receive, he is entitled to the statutory compensation, without reference to his good or bad faith in managing the trust estate. In re Fitzgerald's

78 M.—27

Estate, 57 Wis. 508, 15 N. W. 794. The statute, however, which we are considering, does not attempt to prescribe an inflexible rule as to the compensation of assignees or receivers. Under our insolvency law, the court administers the trust through an assignee or receiver, on equitable principles, except as otherwise expressly provided. The statute and the equity rule are not inconsistent, and we hold that the former does not abrogate the latter. It therefore follows that the trial court did not err in refusing to allow the assignee compensation for his services.

3. The relation of the attorneys of the assignee in this case to the court and to the trust estate was in many respects similar to that of the assignee. It was one of trust and confidence. Their employment as attorneys for the assignee extended to everything connected with the settlement of the trust estate necessary or proper to be done by an attorney. The interest which they undertook to represent was not that of the insolvent or any particular creditor, but the trust estate as represented by the assignee. The contract which the law implied from their employment was that they should render faithful and honest service to the estate. If they have violated this contract, they are not entitled to any compensation for their services; for the rule is that, if an attorney is guilty of actual fraud or bad faith toward his client in the matter of his employment, he is not entitled to any pay for his services. The basis of this rule is good morals and a sound public policy, and it should be enforced in all cases where the fraud of the attorney is established by clear and satisfactory proof. The trial court having found that the attorneys of the assignee were guilty of actual fraud and bad faith in the matter of their employment, it follows that they are not entitled to any compensation for their services out of the trust estate; hence the trial court rightly refused to allow the assignee anything on account of such services, although he had paid his attorneys in part for such services. The assignee claims that, of the $733.40 paid by him to his attorneys, a portion thereof was for legitimate disbursements made by them on account of the estate. The evidence tends to show that $197.75 of the amount paid was for disbursements, but it does not appear from either of the orders made by the trial court that the $197.75 for disbursements

by the attorneys was not allowed, except as to items of disbursements on account of the litigation concerning the Robitshek claim, which of course were not a legitimate charge against the estate.

4. The trial court found as a fact that the assignee used the funds of the trust estate in his own business, and charged him with interest thereon from April 12, 1895, subject to reduction on account of any legitimate disbursements thereafter made. The finding is supported by the evidence. The assignee, however, claims that the conclusion that he must be charged with interest on the trust fund does not follow from the mere fact that he used it in his own business, and relies in support of his contention on the case of In re Shotwell, 49 Minn. 170, 51 N. W. 909, and 52 N. W. 1078. The decision in the case cited cannot be extended as an authority beyond the particular facts of that case, which may be distinguished from the one at bar by the fact that there was in that case no finding that the trustee used the trust fund in his own business. The facts in that case were that the trustee deposited the trust fund with an unquestionably solvent firm, of which he was a member.

"There was no proof that the assignee or the firm of which he was a member used the money, or made a profit out of it; there was no delay in the payment of dividends, no failure in the performance of a duty, and no breach of trust with respect to the trust funds."

The general rule as to charging trustees with interest was stated by this court, after hearing able and exhaustive arguments, in the case of St. Paul Trust Co. v. Kittson, 62 Minn. 408, 414, 65 N. W. 74, as follows:

"Whatever may be the rule in England, the general rule, which seems to be established in the United States by the great weight of authority, is that, if an executor or trustee mingles the trust fund with his own money, or uses it in his private business, he will be charged with simple interest at the rate established by law as the legal rate, in the absence of special agreements. The rule is subject to the qualification that if he receives or makes more than legal interest he shall pay more. Judd v. Dike, 30 Minn. 380, 15 N. W. 672; 1 Perry, Trusts, § 468; Schouler, Exrs. § 538; 2 Woerner, Admn. § 511; Walls v. Walker, 37 Cal. 424, 99 Am. Dec. 296, and note; 3 Williams, Exrs. (7th Am. Ed.) 363, 365, 404, 407. This rule, while it may work a hardship in special cases, is based upon justice and a sound public policy. In justice, because, as held by

Chancellor Kent in Mumford v. Murray, 6 Johns. Ch. 1: The trustee who mingles the trust money with his own, and uses it in his own business, must pay interest, for the reason that he uses it as his own. 'It forms, therefore, a very just and clear case for interest.' In a sound policy, because it prevents abuses by taking away all temptation to executors or trustees to use the trust fund in their private business. To relax the rule, as some courts have done, because the trustee acted in good faith, or did not hazard the fund in trade or speculation, would render the rule uncertain, and invite the evils it is intended to prevent."

Such is the settled law of this state. It follows that the assignee in this case was, upon the trial court's finding of fact, properly chargeable with interest. If, as he claims, he has, ever since the making of the court's first finding in this matter, left the entire trust fund on deposit in his name as assignee, it does not affect the correctness of the court's conclusion; for he might have stopped the running of interest by a distribution of the fund, or by applying to the court for an order touching the custody of the fund pending the hearing and final determination of his petition for a rehearing.

5. The last claim of the assignee is that the court erred in charging him with the item of $58.58. This sum was collected by his attorneys on a judgment of this court in favor of the assignee for his costs and disbursements. A judgment for costs and disbursements is the property of the party recovering it, and not of his attorney,—subject, however, to the lien of the latter for his services. 5 Enc. Pl. & Pr. 122. It does not appear from the record that the claim of the assignee against his attorneys for the amount of his judgment is uncollectible; hence it does not appear that the court erred in charging him with the amount thereof.

Orders affirmed.