UNION BANK OF ST. PAUL v. HORACE P. RUGG and Another.

December 7, 1899.

Nos. 11,745—(99).

### Assignment for Benefit of Creditors—Laws 1895, c. 67—Waiver.

The insolvents herein, on and prior to April 24, 1895, were indebted to the appellant in the sum of $650 upon two promissory notes. On May 20, 1895, they made an assignment for the benefit of their creditors, which was in form and substance an assignment under the general insolvency law of the state as it was prior to the approval on April 24, 1895, of Laws 1895, c. 67, purporting to provide for the discharge of debtors whether creditors filed releases or not. The assignment made no reference to the act of 1895, but, on the contrary, it expressly provided that the trust estate was for the benefit only of creditors who released their claims. The appellant made proof of its claim, but filed no release thereof. Afterwards, and on June 30, 1898, one of the insolvents petitioned the district court for a discharge from all his debts pursuant to the act of 1895, and such proceedings were had that the court made its order granting him a discharge from all his debts held by the creditors named in the order, including appellant, and distributing the trust estate as provided in such act. *Held*, that the appellant did not, under the special facts of this case, waive, by the mere proof of its claim, its constitutional right as to the impairment of the obligation of its contract, and that the order was erroneous as to it.

In the matter of the assignment of Horace P. Rugg and another, insolvents, pending in the district court for Ramsey county, the Union Bank of St. Paul appealed from an order, Brill, J., directing that the assets of the insolvents be distributed among the creditors who filed claims, that certain real estate claimed by said Rugg as homestead be set apart free from claims of his creditors, and granting a discharge from his debts as against certain creditors including the bank. Reversed as to appellant.

*Stevens, O'Brien, Cole & Albrecht,* for appellant.

The act of 1895 is void by reason of uncertainty, ambiguity, and irreconcilable conflict with the act of 1881. The act of 1895 is void because it provides for a personal judgment against residents of the state without personal service. Baldwin v. Hale, 1 Wall. 223,

233; Davis v. Board of Co. Commrs., 65 Minn. 310.   See Pennoyer
v. Neff, 95 U. S. 714; Arndt v. Griggs, 134 U. S. 316; Shepherd v.
Ware, 46 Minn. 174; Smith v. Hurd, 50 Minn. 503; Bardwell v.
Collins, 44 Minn. 97; Whalley v. Eldridge, 24 .Minn. 358; Carson v.
Cochran, 52 Minn. 67; Jewett v. Iowa Land Co., 64 Minn. 531.

The act, if otherwise valid, cannot constitutionally be applied to
a contract made before its passage.   By its terms it applies as well
to contracts existing before as to those created after its passage,
and provides for a discharge of claims of creditors who have not
appeared.   Walker v. Whitehead, 16 Wall. 314; Barnitz v. Beverly,
163 U. S. 118; Van Hoffman v. City of Quincy, 4 Wall. 535, 552;
Planters Bank v. Sharp, 6 How. 301.   Congress alone can pass a
bankruptcy act which shall impair the obligation of contracts.   If
the act was ever valid, it was repealed by the act of 1897, before
the application in question was made, and the proviso does not in-
clude it.   It is not enough to authorize a discharge that the cred-
itor has appeared in the anterior insolvency proceedings.   Such
appearance must be clearly a submission to the jurisdiction in the
discharge proceedings.   1 Rose's Notes on U. S. Reports, 528, and
cases cited.

*Warner, Richardson & Lawrence,* for respondent.

The terms and provisions of the act of 1895 are to be read into
the assignment.   The bank elected to become a party to the pro-
ceedings by proving its claim, and therefore waived its right to con-
tend that the law did not affect it.   Lambert v. Scandinavian-Am.
Bank, 66 Minn. 185; Gilman v. Lockwood, 4 Wall. 409.   The law was
modeled after Sanborn & B. Ann. St. c. 179, which has been in force
in Wisconsin since 1849, and was borrowed from New York, and
has always been sustained in those states.   Even if unconstitu-
tional as to the claim of the bank, had it not appeared, it would not
follow that the act was void in toto.   See State v. Kinsella, 14
Minn. 395 (524); City of Duluth v. Krupp, 46 Minn. 435.   The act
no more impairs the obligation of contracts than did that of 1881,
for it was not the release which under the act of 1881 discharged

the debtor, but the judgment of discharge to which the release gave consent. National German-Am. Bank v. Wilder, 35 Minn. 94.

It does not make the law unconstitutional that the legislature provides that notice shall be served in the same manner as a summons or in such manner as the court may determine, for it cannot be presumed that the court will determine an improper service. But in bankruptcy matters service by publication and mailing is proper. McNamara v. Casserly, 61 Minn. 335, 344. The act was recognized as constitutional with reference to subsequent debts in Lambert v. Scandinavian-Am. Bank, supra, and the law laid down in Wendell v. Lebon, 30 Minn. 234, was applied, that a creditor belonging to the excepted class, making himself a party to the proceeding, cannot object that he comes within the excepted class. See Cooley, Const. Lim. (4th Ed.) 360; Davidson v. Smith, 1 Biss. 346, Fed. Cas. No. 3608; Clay v. Smith, 3 Pet. 411; Baldwin v. Hale, 1 Wall. 223; Gilman v. Lockwood, supra. The appeal should be dismissed because not made within six months of entry of judgment.

START, C. J.

The insolvents herein, on and prior to April 24, 1895, were indebted to the Union Bank of St. Paul, hereinafter called the "Bank," in the sum of $650 and interest upon two promissory notes executed by them to it, and on May 20, 1895, they executed and filed in the district court of the county of Ramsey an assignment for the benefit of their creditors. The assignment did not, in terms, refer to the insolvency law (Laws 1881, c. 148), nor to Laws 1895, c. 67, approved April 24, 1895, purporting to provide for the discharge of insolvent debtors from their debts whether creditors filed releases or not. But it was, in form and substance, an assignment under the insolvency laws of the state as they existed prior to the approval of such act, and expressly provided that the residue of the trust estate, after the payment of expenses, should be paid to such creditors "who shall file releases of their debts and claims" against the assignors. The bank, on June 8, 1895, made proof of its claim as evidenced by the promissory notes, but did not file any release thereof, and it does not appear from the record that it in any other manner appeared or took part in the insolvency proceedings. Nor

does it appear that the insolvents, or either of them, ever filed any notice of any election or intention to claim a discharge from their debts under the act of 1895.

On June 30, 1898, one of the insolvents, Horace P. Rugg, presented his petition to the court to set apart to him certain real property as exempt, and to discharge and release him pursuant to such act. A citation or order to show cause was thereupon issued, which was personally served upon the bank, and such proceedings were thereafter had that the court, on September 21, 1898, made its order setting apart to him the exempt real estate, and granting him a discharge from all his debts held by or owing to all of his creditors named in the order, of whom the bank was one, and directing the clerk to enter judgment against him in favor of each creditor therein named for the amount of their respective claims, and then to forthwith enter a satisfaction of such judgments. On June 5, 1899, the bank appealed.

1. The respondent insists that the appeal must be dismissed for the alleged reason that the determination of the court was in form and effect a judgment from which an appeal can only be taken within six months after its entry, and not an order, as assumed by the bank, from which an appeal may be taken within thirty days after notice thereof. It is not claimed that such notice was ever given; hence the only question is whether the granting of the discharge was, in legal effect, a judgment or an order. If it is the latter, the appeal cannot be dismissed. In the case of Lambert v. Scandinavian-Am. Bank, 66 Minn. 185, 68 N. W. 834, the action of the court denying the debtor's application for a discharge was appealed from as an order, and treated as such by this court; no claim to the contrary having been made. Sections 22, 23, 24, and 26 of the statute in question designate the action of the court granting the debtor the discharge as an order, and provide for an appeal therefrom. We hold that it is an order, and that the appeal therefrom was taken in time.

2. The bank claims that the act of 1895 is unconstitutional in so far as it provides for the discharge of insolvent debtors from debts contracted prior to its passage; hence the court had no power to

make an order discharging the respondent for liability for his debt to the bank.

It is the law that state insolvent laws which assume to discharge contracts made antecedently are unconstitutional, but a creditor may waive his right to insist on the invalidity of such a law as to him. Wendell v. Lebon, 30 Minn. 234, 15 N. W. 109; Lambert v. Scandinavian-Am. Bank, supra. It being admitted in this case that the bank's debt was contracted prior to the approval of the act of 1895, it follows that the order appealed from is erroneous as to the bank unless it has waived its right. The respondent insists that it has, because it made proof of its claim in the general insolvency proceedings. He does not claim that the bank ever took any other part in the proceedings, or released its claim, or received any benefit from the trust estate, or did any other act implying such waiver except to prove its debt. His claim is this:

"The assignment in this case was made after the passage of the law of 1895. The terms and provisions of that law are read into the assignment. With the law of 1895 in force, and forming a part of the assignment, the appellant, the Union Bank, elected to become a party to the proceeding, by proving its claim. It therefore waived its rights to claim that the law did not affect it."

The case of Lambert v. Bank is relied upon in support of this proposition. In the case cited the insolvent debtor applied for his discharge under the act of 1895, and the trial court made its order denying his application as to debts contracted antecedently, from which he appealed. His contention was that by appearing to oppose his discharge, and proving when their debts were contracted, the creditors waived their rights. This court held that a creditor did not, by appearing for the purpose of asserting a constitutional right, thereby waive it; that to construe the statute as claimed would make it simply a trap for such a creditor, cunningly devised to deprive him of his constitutional rights. The question whether the mere proof by the debtor of his claim in the general insolvency proceedings was a waiver of the creditor's rights was not before the court nor decided. It was, however, stated in the opinion that it was in the general insolvency proceedings only that filing an

affidavit, or making proof of claim, or receiving a dividend, or a participation in the proceedings was a waiver of the creditor's rights. This was not a decision as to the constitutionality of the statute, but as to its construction. We held that the provisions of the statute to the effect that making proof of claim, or receiving a dividend, or appearance in the proceedings referred to the general insolvency proceedings, and not to the proceedings to secure the debtor's discharge; otherwise, the statute would be simply a trap.

The question whether the bank in this case waived, by filing proof of its claim, its right to insist that the act of 1895 was unconstitutional as to its debt, and that, therefore, the order of the court discharging the debtor from all liability therefor is erroneous, is an open one. An answer to this question involves a construction of the act in question. The last section of this act is in these words:

"Sec. 27. This act shall not be construed to change nor to prohibit the proceedings and discharge of the insolvent provided for in said chapter 148, General Laws of 1881, nor to repeal the same, nor in any way to affect such proceedings, but shall be held and construed to furnish and provide an additional remedy and relief only upon compliance of said insolvent with the provisions of this act, initiated by the petition or application of said insolvent as aforesaid."

Many of the provisions of the act of 1895 are so radically inconsistent with those of the general insolvency law of 1881 as to present a case for election of remedies by the insolvent debtor. Under the former act the trust estate is to be distributed to all creditors in whose favor judgment is entered and satisfied, whether they file releases or not. See Id. § 24. Under the latter the assignment is for the benefit only of creditors who file releases, and the estate is distributed to them only. G. S. 1894, §§ 4240, 4249. The debtor, under the former act, as a condition precedent to his discharge, must take an oath of innocence, and swear that he has not within six years in any manner disposed of any of his estate for the benefit of himself or family, or to defraud any creditor. Laws 1895, § 15. But under the latter he must have disposed of his property with such intent within six months prior to his assignment in order to defeat his discharge for such cause. G. S. 1894, § 4249. A

debtor might well be in a position to secure his discharge under the general insolvency law when he would not be under the act of 1895, and a creditor is entitled to know under which act the debtor will claim a discharge before he files his proof of claim. And where, as in this case, the debtor makes an assignment for the benefit of such of his creditors only as file releases in accordance with the general insolvency law, with no hint that he will claim a discharge, and have the estate distributed under the act of 1895, a creditor has a right to assume that the debtor has elected to claim his discharge, and have his estate distributed under the general insolvency law alone.

The mere filing of proof of his claim by a creditor in accordance with the law as it stood prior to the act of 1895 was not a waiver of any of his rights, for it was only when he filed a release of his claim as provided by law that the debtor acquired a right to a discharge from liability on account of the debt. It was and is the practice, sanctioned by the courts, for creditors under the general insolvency law to prove their claims, and then wait to see what the probable dividend on their claims will be, before deciding whether they will release their claims or not. If they finally decide not to do so, they are thereafter as strangers to the insolvency proceedings, and the debtor cannot secure a discharge as to their claims. Now, to construe the act of 1895 so as to permit a debtor to make his assignment for the benefit of creditors only who release their claims, and thereby induce them to file proof of their claims simply as a preliminary step to a future determination whether they will comply with the terms of the assignment, and release their claims, and then permit the debtor to apply and receive his discharge under the act of 1895, on the ground that the filing of proof of the claims is a waiver of the constitutional rights of such creditors, would render it unconstitutional. Such a statute would be, as was said in Lambert v. Scandinavian-Am. Bank, simply a trap, cunningly devised to deprive creditors of their constitutional rights. It would enable the debtor to set the trap by making an assignment strictly under the insolvency law, as it was before the passage of the act of 1895, for the benefit of creditors who filed releases of their claims,

and then, after a creditor, in reliance upon the assignment, had filed, but not released, his claim, spring the trap by applying for and securing his discharge under the act of 1895, on the ground that the creditor, by filing his claim, waived his rights, and consented that the court might cancel the obligation of his contract.

We must, then, seek some other construction of this statute, or declare it unconstitutional. If the statute is to be construed as applying only to cases where the debtor, by his assignment, or by an instrument filed before creditors file proofs of their debts, declares that it is his intention to claim a discharge and a distribution of his estate under the act of 1895, we are of the opinion that the act would be constitutional, otherwise not. In such a case the creditor is bound to know the law, and is informed by the records in the insolvency proceedings of the debtor's intention, and acts advisedly in making proof of his claim, and must be held to waive his constitutional right to object to the debtor's discharge. We therefore hold that, to enable an insolvent debtor to claim the benefits of Laws 1895, c. 67, he must have declared his intention to do so in his assignment for the benefit of his creditors, or by an instrument filed before creditors made proofs of their claims. The insolvent in this case did neither. Therefore the bank did not, by filing proof of its debt, waive its constitutional rights, and thereby consent that the court might make an order discharging the insolvent from the obligation of its contract.

The order as to the bank is at least erroneous, and must be reversed as to it. So ordered.