BEN TIMMER v. HARDWICK STATE BANK.[1]

June 7, 1935.

No. 30,416.

[1]Reported in 261 N. W. 456.

*Hansen & Engan,* for appellant.

*Fowler, Carlson, Furber & Johnson, Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* and *Canfield & Michael,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order overruling his general demurrer to defendant's amended answer, the court certifying the questions presented to be important and doubtful.

The action was brought to recover upon a certificate of deposit issued by the bank to plaintiff on December 22, 1931, maturing six to twelve months thereafter at the option of the holder, with interest to date of maturity at four per cent per annum. The first

year's interest was paid but no new certificate issued. It is alleged that plaintiff duly indorsed the certificate and presented the same for payment but that such payment was refused. The answer admits the allegations of the complaint and in avoidance thereof pleads that a nationwide financial emergency existed on and prior to March 4, 1933; that all banks were closed by authority of state or national executives and that pursuant to such authority defendant was closed and remained so closed until reopened pursuant to L. 1933, c. 55, as amended by c. 277, 3 Mason Minn. St. 1934 Supp. §§ 7690-10 to 7690-20, same legislative session. It is also averred that the bank was insolvent and that the commissioner of banks, pursuant to resolution of its board of directors and in conformity with the cited chapters, declared it to be in process of reorganization; that such proceedings were thereafter duly had that a plan of reorganization was approved by the commissioner, submitted to the bank's creditors, including plaintiff, and approved by more than the necessary number thereof as required by the statute to make the plan operative. As a part and portion of the reorganization, $14,000 was levied against the stockholders as a stock assessment, that being all that could be collected from them even if the bank had gone into liquidation. It is also averred that all steps contemplated and provided for by the plan of reorganization were completed and the bank was permitted to reopen and to recommence its business in accordance with and under the provisions of the plan of reorganization; that if the plan had not been approved, the bank would not have been allowed to reopen because of its insolvency but that the commissioner would have been compelled to take possession of its property and business for the purpose of liquidation under the statutes of this state, and that such liquidation could not have proved as advantageous to plaintiff and the bank's other creditors as the present plan of reorganization. Attached to the answer are complete copies of the resolution of the board of directors, the commissioner's order approving the said resolution, his order extending the period for reorganization, the plan for reorganization, depositors' agreement, the commissioner's approval of the plan, and complete data regarding the assets and liabilities of the bank as reorganized

and the assets deemed slow or otherwise nonrealizable and placed in the trust fund. In short, the averments of the answer are to the effect that under the plan of reorganization plaintiff will receive more thereunder than he could possibly obtain were the bank to go into forced liquidation.

The defendant claims that under L. 1925, c. 38, sustained by this court in several cases, the trial court rightly overruled plaintiff's demurrer, more than 90 per centum of the bank's creditors having approved of the plan; and it further relies upon the validity of L. 1933, cc. 55 and 277. Plaintiff asserts that said c. 38 is not available; also that the remedial statutes referred to (L. 1933, cc. 55 and 277) "violate those provisions of the federal and state constitutions prohibiting laws impairing the obligation of contract and the taking of property without due process of law."

Passing the first objection urged by plaintiff, we go directly to the point raised under the second assignment of error just quoted.

Plaintiff asserts, and to this his argument is directed, that the remedial acts passed in 1933 are violative of art. 1, § 11, of the state constitution and of art. I, § 10, of the federal constitution. He cites in support of his contention the following authorities: Wendell v. Lebon, 30 Minn. 234, 238, 15 N. W. 109; Lambert v. Scandinavian-Am. Bank, 66 Minn. 185, 188, 68 N. W. 834; Union Bank of St. Paul v. Rugg, 78 Minn. 256, 260, 80 N. W. 1121; Sturges v. Crowninschield, 4 Wheat. 122, 197, 4 L. ed. 529, 549; 32 C. J. p. 813, § 9, note 83; 12 C. J. p. 1073, § 739, note 46.

The trouble with plaintiff's contention is that he does not distinguish between a law impairing a contract and one which simply changes the remedy for its enforcement. There can be no constitutional right to insist upon a particular form or method of liquidation. In Doty v. Love, 295 U. S. 64, 55 S. Ct. 558, 561, 79 L. ed. 632, 96 A. L. R. 1438, this question is gone into fully by Mr. Justice Cardozo speaking for a unanimous court. Nothing need here be added to what the learned justice therein has most adequately and admirably stated. Here, as in that case [295 U. S. 70], "if we look to the surface of the statute and no farther, there is not even colorable basis for the argument that the constitution is infringed. All

that the statute does upon its face is to change the method of liquidation." And further, "the constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a state official." There too, as here, the nonliquid (often referred to as "frozen") assets were placed in a pool to be administered by the reorganized bank as a trust fund for the benefit of creditors. The court sustained the law and the proceedings had pursuant thereto against the same objection as is urged by plaintiff here. Nothing has or will be taken away from plaintiff. If the bank had gone into liquidation, clearly he could get only his prorata share of the available funds remaining for general creditors. It is averred, and we must take the averment to be true, that plaintiff is entitled to receive out of the reorganized bank's solvent credits the prorata share justly belonging to him and more than would likely have come to him out of a forced liquidation if the bank had been compelled to go through that process. In addition thereto, he is entitled to receive his prorata share of the assets placed in the trust fund, thereby treating all creditors alike and without favoritism to anyone. Instead of being hurt by this process of liquidation, it is obvious that plaintiff has everything to gain thereby. More than 90 per centum of the bank's creditors, situated exactly as is he, have approved thereof. The trust will be administered under and pursuant to judicially guided proceedings— by the same tribunal that would be required to act were forced liquidation to be had. The reorganized bank has superior advantages in respect of making collections of slow and doubtful paper and in disposing of and getting the best possible returns from its real estate holdings. Such proceeding is manifestly more conducive to orderly and satisfactory liquidation than is the ordinary and customary bank receivership. This is a matter of common knowledge to everyone and of which we should and do take judicial notice. "Payment of the creditors is still the end to be attained, and resumption of business a means and nothing more." Doty v. Love, 295 U. S. 64, 70, 55 S. Ct. 558, 561, 79 L. ed. 632, 635.

Every loan made carries with it an element of risk. The security may greatly depreciate in value, and the promisor may become in-

solvent and thereby cause loss to the lender. That risk plaintiff assumed when he deposited his money with the bank and accepted its certificate of deposit in exchange therefor. So it is idle for him to complain about "impairment" of his contract. Of course, whenever there is failure on the part of an obligor to meet his promise there is an "impairment" of the contract obligation to the extent of his failure in that regard. But such impairment does not run afoul the constitutional prohibition against "impairment of contracts." This is clearly pointed out in Doty v. Love, 295 U. S. 64, 55 S. Ct. 558, 79 L. ed. 632; also in the recent case of Continental Ill. Nat. B. & T. Co. v. C. R. I. & P. Ry. Co. 294 U. S. 648, 667, 55 S. Ct. 595, 602, 79 L. ed. 642, 651, 653, where the court goes into the history of bankruptcy from the time of the adoption of our constitution. The court said in reference to § 77 of the bankruptcy act, which section contains provisions for the reorganization of railroads engaged in interstate commerce:

"While attempts have been made to formulate a distinction between bankruptcy and insolvency, it long has been settled that, within the meaning of the constitutional provision, the terms are convertible. * * * From the beginning, the tendency of legislation and of judicial interpretation has been uniformly in the direction of progressive liberalization in respect of the operation of the bankruptcy power. * * * The act of 1800 was one exclusively in the interest of the creditor. But the act of 1841 took what then must have been regarded as a radical step forward by conferring upon the debtor the right by voluntary petition to surrender his property, with some exceptions, and relieve himself of all future liability in respect of past debts. The act of 1800, like the English law, was conceived in the view that the bankrupt was dishonest; while the act of 1841 and the later acts proceeded upon the assumption that he might be honest but unfortunate. * * *

"By the act of 1867, as amended by the act of [January 22], 1874, chap. 390, § 17, 18 Stat. 178, 182, the debtor for the first time was permitted either before or after an adjudication in bankruptcy, to propose terms of composition to his creditors to become binding

upon their acceptance by a designated majority and confirmation by the judge.

"The fundamental and radically progressive nature of these extensions becomes apparent upon their mere statement; but all have been judicially approved or accepted as falling within the power conferred by the bankruptcy clause of the constitution. Taken altogether, they demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed."

The acts here attacked, unlike the Frazier-Lemke act (June 28, 1934, c. 869, 48 St. 1289, 11 USCA, § 203[s]) do not undertake to supply the debtor "capital with which to engage in business in the future" at the expense of the creditor. (See Louisville J. S. Land Bank v. Radford, 295 U. S. 555, 582, 55 S. Ct. 854, 860, 79 L. ed. 920.) That act was condemned largely because under it (295 U. S. 597) "the purpose of the delay in making a sale and of the prolonged possession accorded the mortgagor *is to promote his interests at the expense of the mortgagee."* (Italics ours.) The exact basis for the court's condemnation of that act is summarized thus (295 U. S. 601):

"The province of the Court is limited to deciding whether the Frazier-Lemke Act (11 USCA, § 203[s]) as applied has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value [citing cases]. As we conclude that the act as applied has done so, we must hold it void."

The constitutional grant giving to congress the power to establish uniform laws on the subject of bankruptcy obviously does not affect the present case, state banks not being included in any congressional legislation on the subject. So we are necessarily limited to and must be guided by our own decisions in that respect. In

Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238, this court passed upon a similar enactment (L. 1925, c. 38), to the chapter here under consideration. It is true that that law took effect only, and was so intended, upon deposits made after its enactment. In that respect the act differs from the one here in question. But that distinction is unimportant as both have for their object and purpose the liquidation of slow or frozen assets by permitting a reorganization of the bank and placing in a trust fund such assets as come within that classification. This, as we have shown, is only another method or means toward the accomplishment of the same end— liquidation of assets to meet claims of creditors. When plaintiff made his deposit he was charged with notice of the law with respect to the possibility of reorganization if the bank should later find itself in financial distress. He "of necessity contracted with reference to the new statutory law" and as such is bound thereby. Hagen v. First State Bank, 180 Minn. 113, 115, 230 N. W. 267, 268.

The commissioner of banks under our statute has wide discretionary power and control of the liquidation of state banks. In many respects his authority under the statute is the same, or at least similar, to that granted the comptroller of the currency in the liquidation of national banks. This was clearly pointed out in Hoff v. First State Bank, 174 Minn. 36, 43, 44, 218 N. W. 238, 241. The acts here for review are remedial and for beneficial purposes. As was said in the Hoff case, 174 Minn. 44:

"The commissioner of banks, the same as the comptroller, when he has taken over an insolvent state bank, represents and acts for the bank and its stockholders and creditors as well. He is a state officer designated for such purposes [citing cases]. The commissioner, when he approves a reorganization agreement, is so acting for the bank and its stockholders and creditors. He is presumed to be an impartial agent for that purpose, and to act fairly, impartially and justly. The prescribed petition being presented and acted upon by him, his action should be binding upon all the creditors, unless shown to be and set aside as arbitrary, unjust or fraudulent."

When the commissioner acts upon a composition agreement such as was the reorganization agreement in the instant case, his act in that behalf is not a final judgment so as to preclude anyone from proceeding at law or in equity for relief. While the statute does not give a nonassenting creditor, in express words, opportunity to be heard and to contest the order, the courts are always open for that purpose. Such creditors may "bring suit directly to recover their deposits or may, by any appropriate action, contest the validity of the act of the commissioner. In such suit or action they* are entitled to be heard and to present all matters that they could have presented upon a hearing, before the commissioner." Hoff v. First State Bank, 174 Minn. 36, 45, 218 N. W. 238, 242. Obviously, there is here no constitutional lack of "due process."

We shall not attempt to discuss all the cases bearing upon this subject. Many have arisen during the past few years, and that there is difference of opinion is natural and to be expected. We believe, however, that the majority of cases in both weight and reason support the conclusion we have reached. The cases will be found annotated in 80 A. L. R. 1487; 92 A. L. R. 1337; 95 A. L. R. 1214.

The order is affirmed.