EMANUEL WENDELL and others *vs.* A. LEBON.

February 20, 1883.

**Insolvent Law of 1881 held Constitutional.**—Certain provisions of Laws 1881, *c.* 148, entitled "An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors," considered, and *held* valid and constitutional.

Appeal by plaintiffs from an order of the district court for Clay county, *McKelvy, J.*, presiding, (acting for the judge of the 11th district,) dissolving an attachment. The case is stated in the opinion.

*Briggs & Elders*, for appellants.

*W. K. Gould*, for respondent.

MITCHELL, J. The questions involved in this appeal relate to the constitutionality of certain provisions of chapter 148, Laws 1881, entitled "An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors," passed March 7, 1881, and which took effect July 1st of the same year. A reference to the law itself will be necessary to a full understanding of the case. Suffice it to say here that the act in its essential features is a bankrupt law. Section 1 provides for what may be termed voluntary bankruptcy, by an assignment by the debtor of all his property, not exempt, for the benefit of his creditors. Section 2 provides for putting the debtor into involuntary bankruptcy upon petition of his creditors, upon his committing certain acts of insolvency, and for the appointment by the court of a receiver, with power to take possession of all his property, not exempt, and distribute it among his creditors. In either case only those creditors receive any benefits under the act who file releases to the debtor of all claims other than such as may be paid under the provisions of the act, provided that where, upon a hearing had upon complaint of the creditors, it is ascertained by the judge that the insolvent debtor has fraudulently concealed or disposed of any of his property with intent to cheat or defraud his cred-

itors, he may direct the distribution of his estate among the creditors, without their being required to file such releases. Another provision of the act is that whenever a debtor whose property has been attached or levied upon, by virtue of any writ or process issued out of a court of record of this state in favor of any creditor, shall, within 10 days thereafter, make an assignment of all his property for the equal benefit of all his creditors, pursuant to the provisions of this act, *all such attachments and levies shall be dissolved upon the appointment and qualification of an assignee or receiver,* and thereupon the officers are required to deliver the property levied upon to such assignee or receiver. All proceedings under the act are had under the direction of the district court or a judge thereof, who is vested with large discretionary powers in matters of practice.

In this case the plaintiffs, who were citizens of the state of Illinois, brought this action on the 4th of February, 1882, against defendant, a citizen of this state, to recover the value of certain goods sold by them to him at Chicago between the 2nd of July, 1881, and the 2nd of February, 1882, and caused an attachment therein to be issued and levied upon the property of defendant, on the 6th of February, 1882. After this levy, and on the 7th of February, the defendant made an assignment to J. Goodman Hall of all his property, for the benefit of all his creditors, pursuant to the provisions of section 1 of the act referred to, which was duly filed on the same day. The assignee accepted the trust and duly qualified on the 8th of February, 1882. The court, on motion of the assignee, made an order, on the 25th of February, dissolving this attachment. This is the order appealed from.

1. The first objection made to this act is that, under section 2, a debtor who is in fact solvent—that is, who has sufficient property subject to execution to pay all his debts—may, upon petition of his creditors, be put into involuntary bankruptcy, and his property taken from him by a receiver, simply because he has not, within 10 days after any levy by attachment, execution, or garnishment against him, made an assignment of his property as provided in section 1 of the act, or within such time in good faith instituted proceedings to vacate the attachment, execution, or garnishment. It is argued that this transcends the

constitutional powers of a legislature in enacting a bankrupt act; that this is taking away the debtor's property without due process of law; that there must be insolvency in fact—that is, a deficiency of assets with which to pay debts—before a legislature can exercise any such powers over a person's property.

For the purposes of this case there are two sufficient answers to this argument: *First*, the plaintiffs cannot raise this objection; it is only the debtor himself who can do so. Cooley on Const. Lim. 163-4. *Second*. These proceedings are not under the second, but under the first, section of the act, the assignment being the *voluntary* act of the debtor himself; and the provisions of the two sections are not so connected and dependent on each other but that that which would remain would be complete in itself, and capable of being executed in accordance with the legislative intent, even if the provisions in the second section objected to were stricken out. Cooley on Const. Lim. 177, 181.

We might remark, however, without expressing any opinion as to the correctness of this construction put upon section 2 by appellant, that it has been the common practice in statutes of this character to make the doing or omitting to do certain acts of this kind a sufficient legal ground for declaring a debtor insolvent, and for sequestrating his estate for the benefit of creditors, regardless of the fact whether he was or was not insolvent in the popular sense of not having sufficient property to pay his debts; and the power of the legislature to do so has never been questioned, but often, impliedly at least, fully recognized. See *O'Neil* v. *Glover*, 5 Gray, 144; *Kimball* v. *Morris*, 2 Met. 573; *Wheeler* v. *Bacon*, 4 Gray, 550.

2. If we correctly understand counsel's second objection urged against this act, it, in substance, is that a creditor is entitled to *all* the present property of his debtor in satisfaction of his debt; that courts of this state have no power to reach the property of a debtor situate in other states; and yet this act requires a creditor, as a condition to sharing in the distribution of the debtor's estate, to release him from all claims other than such as may be paid under the provisions of the act. In other words, while the law may be able only to give him a part of what he is entitled to, yet, in order to get that part, it requires him to release all claim to the remainder.

If there is anything in this objection, it could be urged with equal force against any bankrupt law, state or federal, that could be enacted; for neither would have any inherent authority in foreign jurisdictions. But the assignment of the debtor's property provided for by the act is not limited to property within the state, but includes all his property, wherever situated; and while other jurisdictions might, on grounds of policy, give preference to domestic attaching creditors over foreign assignees or receivers in bankruptcy, yet, subject to this exception, they would, on principles of comity, recognize the rights of such assignees or receivers to the possession of the property of the insolvent debtor. Story on Conflict of Laws, § 403 *et seq.* We think there is nothing in the point.

3. The third objection is that the act does not give the creditor a right of trial by jury upon the question whether the debtor's property may be distributed among his creditors without their filing releases, where the debtor has fraudulently concealed or disposed of any of it; that, under the insolvency law in force when our constitution was adopted, (Rev. St. 1851, *c.* 89; Pub. St. 1858, *c.* 79,) this right was given, and therefore the act under consideration is in violation of section 4, article 1, of the constitution, which declares that "the right of trial by jury *shall remain inviolate* and shall extend to all cases at law, without regard to the amount in controversy."

We are not prepared to say that the issue as to whether an insolvent debtor had fraudulently concealed, or fraudulently incumbered or disposed of any of his property, with the intent to cheat and defraud his creditors, might not, under the provisions of section 10 of the act of 1881, be submitted to a jury, if requested by either party, and required by any constitutional provision. But, however that may be, a comparison of the old insolvent law and the act of 1881 will show that, although having some resemblance to each other in some of their provisions, they are entirely different acts, both in their scope and effect, and that the issue to be submitted to a jury under section 8 of the old law is not only different in itself, but for an entirely different purpose, from that to be determined under section 10 of the present act. The act of 1881 is an entirely new act, creating in effect a new tribunal, whose proceedings are not "at law," or accord-

ing to the course of the common law, but are special in their nature, and correspond more nearly to the proceedings in a court of equity. The constitutional provision invoked does not apply to proceedings of this kind. *Ames* v. *Lake Superior & Miss. R. Co.*, 21 Minn. 241, 293; *City of Minneapolis* v. *Wilkin*, ante, p. 140.

4. The objection that the act does not provide for due or reasonable notice to the creditor is sufficiently answered by what is said in *Weston* v. *Loyhed*, ante, p. 221.

5. Finally, it is insisted that although this act may be valid as between citizens of this state, yet it is wholly void and inoperative for any purpose as against citizens of other states. This requires a consideration of the power and authority of states to legislate on the subject of bankrupt and insolvent laws. This whole subject has been often gone over by the supreme court of the United States, and ever since the case of *Ogden* v. *Saunders*, 12 Wheat. 213, the matter may be considered as set at rest, and the law settled as follows:

*First.* The several states have power to legislate on the subject of bankrupt and insolvent laws; subject, however, to the authority conferred upon congress by the constitution of the United States to adopt a uniform system of bankruptcy, which, when exercised, is paramount: provided, however, that such state laws do not impair the obligation of contracts, within the meaning of section 10, article 1, of the federal constitution.

*Second.* A state bankrupt law which discharges both the person of the debtor and his future acquisitions of property, and thereby terminates the legal obligation of the debt, is not a law "impairing the obligation of contracts," so far as respects debts contracted subsequent to the passage of the law, but cannot be constitutionally applied to contracts entered into before it was passed.

*Third.* But it can only apply to contracts made within the state where an insolvent law exists, between citizens of that state, but cannot be made to apply to a contract made in such state between a citizen thereof and a citizen of another state, nor to contracts not made within the state, except, perhaps, where both parties are citizens of the state passing the law.

*Fourth.* If, however, the creditor in any of these cases voluntarily makes himself a party to the proceedings under the law, as by proving his claim and accepting the benefits of the law, he will be bound thereby, and will not afterwards be heard to object that his debt was excluded by the constitution from the effect of the law. *Ogden* v. *Saunders, supra; Boyle* v. *Zacharie,* 6 Pet. 348, 635; *Suydam* v. *Broadnax,* 14 Pet. 67, 75; *Cook* v. *Moffat,* 5 How. 295; *Baldwin* v. *Hale,* 1 Wall. 223; *Gilman* v. *Lockwood,* 4 Wall. 409.

Of course, under these conditions, it is difficult to frame a state bankrupt law that will be of much value and yet keep within the limitations imposed by the federal constitution. But whatever may be the practical value of the present law, an examination of its provisions will show that they have been carefully kept within these constitutional limitations, and that its author has not ventured as near to the forbidden line as have the authors of many laws of other states on the same subject.

The act does not attempt to discharge the debtor from the debts of any creditors except of those who voluntarily file releases to the debtor, in consideration of the benefit of the provisions of the law. It gives the same right to non-residents as to our own citizens to come in and avail themselves of its benefits. If any creditor, be he citizen or non-resident, prefers not to come in and accept the provisions of the law, he is at liberty to stay out; and, if he do so, he retains his claim and right of action thereon against the debtor, unaffected by the insolvency proceedings. The provision of the law to the effect that the assignment made by the debtor within 10 days after the levy of the attachment upon his property dissolves the attachment, does not impair the obligation of the contract. This is a matter relating wholly to the remedy, and is entirely within the control of the *forum.* Not only was plaintiffs' attachment levied, but (a fact probably not material) their debt itself was contracted, after the passage of this law. When the plaintiffs come into this state to seek their remedy in our courts, they must take it as the law of the state gives it to them. The law of the *forum* governs the remedy. The attachment belongs to the matter of the remedy. The plaintiffs, while this law was in force, came into the state and attached this property. The

effect of the attachment was to bind the property as security for such judgment as they should recover, subject, however, to be dissolved, at any time within 10 days, by an assignment by their debtor of all his property for the benefit of all his creditors.   This defeasance was co-extensive with the charge on the property, and, by the happening of the condition, the attachment was dissolved.   In the matter of remedy the plaintiffs stood in this respect on an equal footing with our own citizens.   *Bigelow* v. *Pritchard*, 21 Pick. 169; *Grant* v. *Lyman*, 4 Met. 470.   See, also, *Springer* v. *Foster*, 2 Story, 383.

Counsel suggests that if this suit could have been instituted in the federal court, an attachment issued out of that court could not have been affected by the state law; and he argues that he ought not to be put in any less favorable position because he was compelled to commence his action in the state court.   There is no force whatever in his suggestion.   Of course state laws cannot of themselves affect process issued out of federal courts, but they have entire control over process issuing out of state courts, even at the suit of citizens of other states.   *Springer* v. *Foster*, *supra*.   But even if plaintiffs could have brought this action in the United States court, the same contingency which now dissolves the attachment would, under the federal statutes, have also dissolved it.   U. S. Rev. St. § 933; *Mather* v. *Nesbit*, 13 Fed. Rep. 872.

Order affirmed.